**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF LOUISIANA**

| | |
|---|---|
| **KEYOINTA M. MARTIN** | **CIVIL ACTION** |
| **VERSUS** | **NO. 14-1339** |
| **THE HONORABLE EDWARD A. DUFRESNE, JR., ET AL.** | **SECTION "I" (1)** |

**REPORT AND RECOMMENDATION**

Plaintiff, Keyointa M. Martin, a state prisoner, filed this *pro se* civil action pursuant to 42 U.S.C. § 1983 against Edward A. Dufresne, Jr., Thomas F. Daley, Marion F. Edwards, Clarence E. McManus, Walter J. Rothschild, Fredericka Wicker, Greg C. Guidry, Thomas J. Kliebert, Sol Gothard, H. Charles Gaudin, James Cannella, and Susan Chehardy, all of whom are current or former judges of the Louisiana Fifth Circuit Court of Appeal.

Federal law mandates that federal courts "review, before docketing, if feasible or, in any event, as soon as practicable after docketing, a complaint in a civil action in which a prisoner seeks redress from a governmental entity or officer or employee of a governmental entity." 28 U.S.C. § 1915A(a). Regarding such lawsuits, federal law further requires:

> On review, the court shall identify cognizable claims or dismiss the complaint, or any portion of the complaint, if the complaint –

> (1) is frivolous, malicious, or fails to state a claim upon which relief may be granted; or
> (2) seeks monetary relief from a defendant who is immune from such relief.

28 U.S.C. § 1915A(b).

Additionally, with respect to actions filed *in forma pauperis*, such as the instant lawsuit, federal law similarly provides:

> Notwithstanding any filing fee, or any portion thereof, that may have been paid, the court shall dismiss the case at any time if the court determines that ... the action or appeal –
>
> (i) is frivolous or malicious;
> (ii) fails to state a claim on which relief may be granted; or
> (iii) seeks monetary damages against a defendant who is immune from such relief.

28 U.S.C. § 1915(e)(2)(B).

A complaint is frivolous "if it lacks an arguable basis in law or fact." Reeves v. Collins, 27 F.3d 174, 176 (5th Cir. 1994). In making a determination as to whether a claim is frivolous, the Court has "not only the authority to dismiss a claim based on an indisputably meritless legal theory, but also the unusual power to pierce the veil of the complaint's factual allegations and dismiss those claims whose factual contentions are clearly baseless." Neitzke v. Williams, 490 U.S. 319, 327 (1989); Macias v. Raul A. (Unknown), Badge No. 153, 23 F.3d 94, 97 (5th Cir. 1994).

A complaint fails to state a claim on which relief may be granted when the plaintiff does not "plead enough facts to state a claim to relief that is plausible on its face. Factual allegations must be enough to raise a right to relief above the speculative level, on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." *In re* Katrina Canal Breaches Litigation, 495 F.3d 191, 205 (5th Cir. 2007) (citation, footnote, and quotation marks omitted).

Although broadly construing plaintiff's complaint,[1] the Court nevertheless finds that the complaint should be dismissed as frivolous, for failing to state a claim on which relief may be granted, and/or for seeking monetary damages against a defendant who is immune from such relief.

The instant case is one of several filed in this Court based on facts which came to light upon the suicide of Jerrold Peterson, the former Central Staff Director of the Louisiana Fifth Circuit Court of Appeal. See, e.g., Lewis v. Louisiana, Civ. Action No. 09-3088, 2011 WL 3924885 (E.D. La. Aug. 16, 2011), adopted, 2011 WL 3957247 (E.D. La. Sept. 7, 2011); McGrew v. Dufresne, Civ. Action No. 09-6515, 2011 WL 765812 (E.D. La. Jan. 28, 2011), adopted, 2011 WL 766074 (E.D. La. Feb. 24, 2011); Chisley v. DuFresne, Civ. Action No. 10-154, 2010 WL 971801 (E.D. La. Mar. 11, 2010); Plaisance v. Bowles, Civ. Action No. 08-5053, 2009 WL 5178305 (E.D. La. Dec. 23, 2009); Hartwell v. Bowles, Civ. Action No. 08-5120, 2009 WL 4891947 (E.D. La. Dec. 16, 2009); Luna v. Kliebert, Civ. Action No. 09-3853, 2009 WL 2175773 (E.D. La. July 17, 2009), aff'd, 368 Fed. App'x 500 (5th Cir. 2010); Washington v. Louisiana, Civ. Action No. 09-3186, 2009 WL 2015556 (E.D. La. June 30, 2009); Johnson v. Parish of Jefferson, Civ. Action No. 09-2516, 2009 WL 1808718 (E.D. La. June 19, 2009); Severin v. Parish of Jefferson, Civ. Action No. 09-2766, 2009 WL 1107713 (E.D. La. Apr. 23, 2009), aff'd, 357 Fed. App'x 601 (5th Cir. 2009); Smith v. Judges of La. Fifth Circuit Court of Appeal, Civ. Action No. 08-4350, 2009 WL 78430, at *2 (E.D. La. Jan. 9, 2009). Those troubling facts, which are summarized below, are now well known.

[1] The court must liberally construe a *pro se* civil rights complaint. See Moore v. McDonald, 30 F.3d 616, 620 (5th Cir. 1994).

The Louisiana Constitution provides that each state Court of Appeal "shall sit in panels of at least three judges selected according to rules adopted by the court." La. Const. art. V, § 8(A). However, the judges of the Louisiana Fifth Circuit Court of Appeal instituted a procedure in 1994 to circumvent that constitutional requirement with respect to routine *pro se* prisoner post-conviction writ applications not presenting special or unusual circumstances or issues. Specifically, the court followed a procedure under which such applications would be handled solely by Judge Edward A. Dufresne. Further, upon Peterson's death, it was revealed that the applications were apparently handled solely by Peterson. Purportedly, Peterson received and reviewed those applications, prepared rulings denying them, and had Judge Dufresne sign the rulings without reviewing the underlying applications. The other two judges listed on the rulings did not review the applications, sign the rulings, or even know they were on the panel in whose names the rulings were issued.

When the existence of this procedure became public knowledge, many prisoners claimed that their rights had been violated by the Louisiana Fifth Circuit Court of Appeal and sought relief from the Louisiana Supreme Court. In response, the Louisiana Fifth Circuit Court of Appeal unanimously adopted an en banc resolution on September 9, 2008, which provided:

> Recommend to the Supreme Court the following possible solution to the Pro-Se Criminal Writ applications complaining that earlier applications by those same applicants had received inadequate review by this Court.
>
> First, we are proposing that you consider remanding each of the current applications in your court to this court with direction that they be assigned to respective three-judge panels randomly selected from five judges of this court; namely, Judges Chehardy, McManus, Wicker, Guidry and Pro Tempore Jasmine who incidentally have had no hand in the process by which this court earlier handled these multiple applicants' earlier writs in this court.
>
> Under this proposal, the applications will be controlled, handled and considered only by those five judges and such members of their respective personal staffs selected by them as a group, and as approved by the respective panels.

> Furthermore, none of the other three judges on this court will be involved in any way in consideration of the work of the three-judge panels, or conversant in any way with the five-panel judges to be assigned to handle these cases and their respective personal staff members which the five judges alone will choose to have assist them.
>
> We are guided in this request by a desire to avoid imposing financial or other burdens on other judges in this state who might otherwise be called upon to consider these cases out of our court.

See State v. Cordero, 993 So.2d 203, 206 (La. 2008).

In its decision on a writ application filed by one such prisoner, Sandra Cordero, the Louisiana Supreme Court adopted that resolution, holding:

> Therefore, in accordance with the Resolution of the Fifth Circuit Court of Appeal en banc, the application of Sandra Cordero is herewith transferred to the Fifth Circuit Court of Appeal for consideration according to the procedures outlined in the Fifth Circuit Court of Appeal's en banc resolution of September 9, 2008. These three-judge panels are to be insulated from all persons, other than the panel judges and their respective personal staffs. This Court also determines that the applications presently filed and pending in this Court by petitioners, raising similar claims and enumerated hereinabove should also be handled in accordance with the procedures outlined in this Order and the Fifth Circuit Court of Appeal's en banc resolution of September 9, 2008. Further, this Court also determines under its supervisory authority that the applications presently filed and pending in the Fifth Circuit Court of Appeal by those petitioners who raise similar claims should also be handled in accordance with the procedures outlined in this Order and the Fifth Circuit Court of Appeal's en banc resolution of September 9, 2008.

Cordero, 993 So.2d at 205.

In 2009, plaintiff filed a civil lawsuit in state court against these defendants arguing that the foregoing actions had violated her rights. That lawsuit was dismissed with prejudice in 2013.[2] A

---

[2] Rec. Doc. 1-1, p. 6. Out of an abundance of caution, this Court notes that plaintiff appears to argue that her rights were violated in her state lawsuit as a result of the onerous provisions of Louisiana's Prison Litigation Reform Act. See Rec. Doc. 1, pp. 14-15. It is unclear whether she is attempting to separately challenge the constitutionality of those provisions in this federal civil action. However, even if that is her intent, her challenge clearly fails. Not only has she failed to name a proper defendant with respect to any such challenge, the United States Fifth Circuit Court

related writ application was then also denied by the Louisiana Supreme Court on November 22, 2013. Martin v. Dufresne, 126 So.3d 487 (La. 2013). She thereafter filed the instant lawsuit in the United States District Court for the Middle District of Louisiana, and the case was subsequently transferred to this Court.

As an initial matter, the Court notes that plaintiff indicates that her federal complaint is meant to serve as an appeal of the dismissal of her state lawsuit.[3] However, if she is indeed attempting to "appeal" the dismissal of her state court lawsuit, this court has no such appellate jurisdiction; the only federal court with such jurisdiction is the United States Supreme Court. As the Supreme Court has explained:

> This Court is vested, under 28 U.S.C. § 1257, with jurisdiction over appeals from final state-court judgments. We have held that this grant of jurisdiction is exclusive: "Review of such judgments may be had *only* in this Court." District of Columbia Court of Appeals v. Feldman, 460 U.S. 462, 482, 103 S.Ct. 1303, 75 L.Ed.2d 206 (1983) (emphasis added); see also Atlantic Coast Line R. Co. v. Locomotive Engineers, 398 U.S. 281, 286, 90 S.Ct. 1739, 26 L.Ed.2d 234 (1970); Rooker v. Fidelity Trust Co., 263 U.S. 413, 416, 44 S.Ct. 149, 68 L.Ed. 362 (1923). Accordingly, under what has come to be known as the Rooker-Feldman doctrine, lower federal courts are precluded from exercising appellate jurisdiction over final state-court judgments.

Lance v. Dennis, 546 U.S. 459, 463 (2006).

If, however, plaintiff is in fact attempting only to *relitigate* the same claims already decided against her in the state courts, she faces a different but equally formidable obstacle: the res judicata

---

of Appeals has expressly held that Louisiana's Prison Litigation Reform Act does not violate prisoners' rights to due process or equal protection. Hamilton v. Foti, 372 Fed. App'x 480, 484-85 (5th Cir. 2010); Clifford v. Louisiana, 347 Fed. App'x 21, 23-24 (5th Cir. 2009).

[3] See Rec. Doc. 1, pp. 6 and 10.

doctrine. Although the Rooker-Feldman doctrine and the res judicata doctrine are often confused, they are in fact quite different. As the United States Tenth Circuit Court of Appeals has explained:

> The Rooker–Feldman doctrine prohibits federal suits that amount to appeals of state-court judgments. When the state-court judgment is not itself at issue, the doctrine does not prohibit federal suits regarding the same subject matter, or even the same claims, as those presented in the state-court action. The doctrine that governs litigation of the same subject matter or the same issues is res judicata – specifically, claim preclusion and issue preclusion. Confusion on this matter is unsurprising, because whenever Rooker–Feldman bars a federal suit, the state suit must have concerned the same subject matter as the federal suit (after all, the federal suit is challenging the state judgment), a precondition for invocation of preclusion doctrine. But the distinction between Rooker–Feldman and res judicata must be preserved.

Bolden v. City of Topeka, Kansas, 441 F.3d 1129, 1139 (10th Cir. 2006); accord Truong v. Bank of America, N.A., 717 F.3d 377, 384 (5th Cir. 2013).[4]

---

[4] The Tenth Circuit went on to give an example which makes the distinction easier to understand. The Tenth Circuit explained:

> Rooker-Feldman does not bar federal-court claims that would be identical even had there been no state-court judgment; that is, claims that do not rest on any allegation concerning the state-court proceedings or judgment. A suit on such claims could not be characterized as an "appeal" of the state-court judgment, which is the core concern of Rooker-Feldman. To illustrate, say a father was deprived of custody of his child by a state-court judgment. If he files suit in federal court, seeking to invalidate the state-court judgment on the ground that the state-court proceedings deprived him of due process or that the judgment was otherwise contrary to federal law, his suit would be barred by Rooker-Feldman; the suit usurps the Supreme Court's exclusive appellate jurisdiction because it seeks to set aside the judgment based on a review of the prior proceedings. If, however, the father simply brought suit in federal court seeking custody of his child, without raising any complaint about the state-court proceedings, Rooker-Feldman cannot be invoked; his federal claim would have been the same even in the absence of the state-court judgment. A myriad of doctrines, including res judicata, would almost certainly bar the suit. But because he is not seeking to overturn the state-court judgment, Rooker-Feldman is inapplicable, regardless of whether a favorable judgment in federal court would be inconsistent with that judgment and would deny a legal conclusion that the state court has reached.

Bolden, 441 F.3d at 1145 (quotation marks and brackets omitted).

In the instant case, based on plaintiff's representations in her complaint, it appears that she is attempting to relitigate the exact same claims in this Court which were dismissed on the merits in the state court. If so, res judicata would preclude her from doing so. However, because this Court does not have a copy of her state court complaint or a complete copy of the state court's decision, the undersigned cannot conclusively determine precisely to what extent res judicata in fact applies. Nevertheless, even if this Court assumes that there is some part of the claims asserted herein which would not be barred by res judicata, dismissal is still appropriate because all of plaintiff's claims against the named defendants also fail on the following alternative grounds.

Plaintiff is attempting to bring federal civil rights claims against the named defendants for their roles, if any, in formulating or participating in former procedures used by the Louisiana Fifth Circuit Court of Appeal for disposing of post-conviction writ applications filed by *pro se* prisoners. However, she simply is not entitled to any form of relief under 42 U.S.C. § 1983 with respect to those claims.

To the extent that plaintiff is seeking an award of monetary damages against the defendants, they are protected from her claims by their absolute judicial immunity. See, e.g., Guccione v. Parish of Jefferson, 382 Fed. App'x 357, 358 (5th Cir. 2010); Severin v. Parish of Jefferson, 357 Fed. App'x 601, 604-05 (5th Cir. 2009). It has long been held that "judges of courts of superior or general jurisdiction are not liable to civil actions for their judicial acts, even when such acts are in excess of their jurisdiction, and are alleged to have been done maliciously or corruptly." Bradley v. Fisher, 80 U.S. (13 Wall.) 335, 351 (1871); see also Harper v. Merckle, 638 F.2d 848, 856 n.9 (5th Cir. 1981) ("[W]e can envision no situation – where a judge acts after he is approached *qua* judge by

parties to a case – that could possibly spawn a successful § 1983 suit."). The United States Supreme Court has explained: "Like other forms of official immunity, judicial immunity is an immunity from suit, not just from ultimate assessment of damages. Accordingly, judicial immunity is not overcome by allegations of bad faith or malice, the existence of which ordinarily cannot be resolved without engaging in discovery and eventual trial." Mireles v. Waco, 502 U.S. 9, 11 (1991). Further, judicial immunity is clearly applicable in cases, such as the instant one, brought pursuant to 42 U.S.C. §1983. Stump v. Steward, 435 U.S. 349, 356 (1978); Pierson v. Ray, 386 U.S. 547, 554-55 (1967).

The Supreme Court has recognized only two instances in which judicial immunity is inapplicable:

> [O]ur cases make clear that the immunity is overcome in only two sets of circumstances. First, a judge is not immune from liability for nonjudicial actions, *i.e.*, actions not taken in the judge's judicial capacity. Second, a judge is not immune for actions, though judicial in nature, taken in the complete absence of all jurisdiction.

Mireles, 502 U.S. at 11-12 (citations omitted).

Neither of those exceptions applies in this case. Regarding the first exception, the Supreme Court has explained:

> The relevant cases demonstrate that the factors determining whether an act by a judge is a "judicial" one relate to the nature of the act itself, *i.e.*, whether it is a function normally performed by a judge, and to the expectations of the parties, *i.e.*, whether they dealt with the judge in his judicial capacity.

Stump, 435 U.S. at 362. The act at issue here, the denial of plaintiff's post-conviction *pro se* writ application, clearly involved a function normally performed by a judge. Severin, 357 Fed. App'x at 604. Further, by filing the writ application, plaintiff was clearly dealing with the judges in their

judicial capacities. Id. Regarding the second exception, there is no question that the judges had jurisdiction over plaintiff's writ application. Id.

Plaintiff essentially proposes a third exception, opining that the judges should not be immune because they arguably acted beyond their authority by improperly delegating that authority to a single judge, Judge Dufresne, or allegedly ceding that authority to their staff. However, the Supreme Court has expressly rejected the contention that judicial immunity is inapplicable where a judge simply acts beyond his authority. See, e.g., Stump, 435 U.S. at 356 ("A judge will not be deprived of immunity because the action he took was in error, was done maliciously, or was in excess of his authority ....").

Accordingly, for the foregoing reasons, the Court finds that the named judges are protected by their absolute judicial immunity against any claims for monetary damages.

To the extent that plaintiff may be seeking declaratory relief, it is true that judicial immunity does not bar declaratory relief. Holloway v. Walker, 765 F.2d 517, 525 (5th Cir. 1985). However, any request for declaratory relief here would in reality be nothing more than a veiled attempt to challenge the validity of her present confinement. If she wished to pursue such a challenge, her recourse was to file a *habeas corpus* petition, not a federal civil rights complaint. Severin, 357 Fed. App'x at 605; Smith v. Judges of La. Fifth Circuit Court of Appeal, Civ. Action No. 08-4350, 2009 WL 78430, at *2 (E.D. La. Jan. 9, 2009); see also Preiser v. Rodriguez, 411 U.S. 475, 500 (1973) ("[W]hen a state prisoner is challenging the very fact or duration of his physical imprisonment, and the relief he seeks is a determination that he is entitled to immediate release or a speedier release

from that imprisonment, his sole federal remedy is a writ of habeas corpus."); Boyd v. Biggers, 31 F.3d 279, 283 n.4 (5th Cir. 1994).

To the extent that plaintiff may be seeking some form of injunctive relief, any request for such relief, even if it were not otherwise precluded,[5] would be moot. Severin, 357 Fed. App'x at 605. As noted, the challenged procedures have already been discontinued. Further, the Louisiana Fifth Circuit Court of Appeal did not have the last word with respect to plaintiff's state post-conviction claims. After that court denied her post-conviction writ application, she sought review from the Louisiana Supreme Court, which likewise denied her claims in a decision presumably untainted by the Court of Appeal's problematic procedures. State *ex rel.* Martin v. State, 976 So.2d 171 (La. 2008); see also State v. Cordero, 993 So.2d 203, 214 (La. 2008) (Kimball, J., concurring in the denial of rehearing) ("Many of these cases have, in fact, originally been reviewed and have had opinions written by the courts of appeal and by the seven justices of this court on original appellate review, in addition to having been reviewed on post conviction by the seven justices of this court in earlier proceedings, notwithstanding the review or lack thereof that occurred precedent to ours."). Moreover, she has already sought and been afforded further review of her post-conviction claims under Cordero. State *ex rel.* Martin v. State, 993 So.2d 1261 (La. 2008); see also State *ex rel.* Martin v. State, 71 So.3d 303 (La. 2011).

---

[5] The Court notes that the Federal Courts Improvement Act of 1996, which amended 42 U.S.C. §1983, provides that "in any action brought against a judicial officer for an act or omission taken in such officer's official capacity, injunctive relief shall not be granted unless a declaratory decree was violated or declaratory relief is unavailable." 42 U.S.C. §1983; see Guerin v. Higgins, 8 Fed. App'x 31 (2nd Cir. 2001); Nollet v. Justices of the Trial Court of the Commonwealth of Massachusetts, 83 F. Supp. 2d 204, 210 (D. Mass.), aff'd, 248 F.3d 1127 (1st Cir. 2000).

For all of the foregoing reasons, plaintiff simply is not entitled to any form of relief against the named defendants under 42 U.S.C. § 1983.

## RECOMMENDATION

It is therefore **RECOMMENDED** that plaintiff's federal civil rights claims under 42 U.S.C. § 1983 be **DISMISSED WITH PREJUDICE** as frivolous, for failing to state a claim on which relief may be granted, and/or for seeking monetary damages against a defendant who is immune from such relief.

A party's failure to file written objections to the proposed findings, conclusions, and recommendation in a magistrate judge's report and recommendation within fourteen (14) days after being served with a copy shall bar that party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court, provided that the party has been served with notice that such consequences will result from a failure to object. 28 U.S.C. § 636(b)(1); Douglass v. United Services Auto. Ass'n, 79 F.3d 1415, 1430 (5th Cir. 1996) (en banc).[6]

New Orleans, Louisiana, this fourteenth day of July, 2014.

**SALLY SHUSHAN**
**UNITED STATES MAGISTRATE JUDGE**

---

6 Douglass referenced the previously applicable ten-day period for the filing of objections. Effective December 1, 2009, 28 U.S.C. § 636(b)(1) was amended to extend that period to fourteen days.